## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| **MEMORY BOWL, et al.,** | **Civil Action No. 11-3882 (PGS)** |
| **Plaintiffs,** | |
| **v.** | **MEMORANDUM OPINION** |
| **NORTH POINTE INSURANCE COMPANY,** | **AND ORDER** |
| **Defendant.** | |

This matter having been opened to the Court upon Motion [Docket Entry No. 11] by Defendant North Pointe Insurance Company ("North Pointe" or "Defendant") for a Protective Order pursuant to FED.R.CIV.P. 26(c), regarding Memory Bowl, Gorwin Corp., Azgara Bowl, LLC and Memory Recreation's (collectively, "Plaintiff" or "Memory Bowl") demand to depose Defendant's counsel, Steven J. Polansky, as well as two other North Pointe employees. Plaintiff has filed a Brief [Docket Entry No. 13] in opposition to North Pointe's Motion. The Court has reviewed all arguments made in support of and in opposition to North Pointe's motion and considers same without oral argument pursuant to FED.R.CIV.P. 78. For the reasons set forth more fully below, North Pointe's motion is GRANTED in part and DENIED in part without prejudice.

## I.     Background

The parties are familiar with the background of this matter and therefore it shall not be repeated here at length.  The underlying case revolves around a fire loss insurance claim submitted to North Pointe by Memory Bowl.  North Pointe is Memory Bowl's property insurance provider. Memory Bowl was less than satisfied with North Pointe's resolution of its insurance claim and filed a Complaint alleging bad faith on the part of North Pointe. Once the dispute arose, North Pointe retained Mr. Polansky as counsel for Memory Bowl's insurance claim. Mr. Polansky performed a

variety of duties pursuant to his role as counsel, some of which are at issue in the present motion. Specifically, on numerous occasions Mr. Polansky corresponded with Memory Bowl's Public Adjuster to discuss requirements associated with Plaintiff's insurance policy. [Docket Entry No. 13, at *12; Docket Entry No. 11-2, at *6]. Mr. Polansky also communicated with a number of third parties throughout the claim adjustment process, including a mediator (with regard to a mediation which took place on January 13, 2010), the Department of Banking and Insurance, an appraisal umpire and Plaintiff's appraiser. [Docket Entry No. 11-2, at *6]. Memory Bowl also alleges that Mr. Polansky communicated with two North Pointe employees–Mr. O'Brien and Mr. Rennell–regarding policy coverage issues. [Docket Entry No. 13, at *7]. With regard to Messrs. O'Brien and Rennell, both of whom are North Pointe claims adjusters who worked on Memory Bowl's claim, Memory Bowl asks that the Court compel them to be deposed in New Jersey [Docket Entry No. 13, at * 23-26], while North Pointe requests that the depositions take place in Michigan [Docket Entry No. 11-2, at *30-31].

North Pointe contends that Mr. Polansky's communications and mental impressions are beyond the scope of discovery permitted by FED.R.CIV.P. 26(b)(1). Specifically, North Pointe claims that any communications by Mr. Polansky with and on behalf of North Pointe are protected by the attorney-client privilege because the nature of his services was legal. [Docket Entry No. 11-2, at *11-13]. North Pointe also states that they have not waived the privilege by asserting an "advice of counsel" defense [*Id.* at *11-12]. North Pointe further argues that, even in cases of alleged bad faith, courts have not waived the attorney-client privilege. *Spiniello Cos. v. Hartford Fire Ins. Co.*, 2008 U.S. Dist. LEXIS 53509 (D.N.J. 2008). [*Id.* at *12-13]. North Pointe next contends that Mr. Polansky's impressions, conclusions and opinions are protected by the privilege which prevents

expert testimony from being compelled by an opposing party.  [*Id.* at *13]. North Pointe argues that this prohibition applies to depositions, *Genovese v. New Jersey Transit Rail Operations, Inc.*, 234 N.J. Super. 375 (App. Div.) *cert. den.* 118 N.J. 195 (1989), and at trial, *Fitzgerald v. Stanley Roberts, Inc.*, 186 N.J. 286 (2006). [*Id.* at *15-16]. North Point also claims that Mr. Polansky's impressions, opinions and conclusions are protected by the work product doctrine, which is recognized in New Jersey. *Laporta v. Gloucester Cty. Bd. of Chosen Freeholders*, 340 N.J. Super. 254, 259-60 (App. Div. 2001). [*Id.* at *17-18].

Next, North Pointe argues that any of Mr. Polansky's non-privileged communications should be precluded by Rule 26(b)(2)(c) because they are available through less burdensome means. [Docket Entry No. 11-2, at *18-19]. Specifically, North Pointe suggests that any non-privileged communications can be produced via stipulation, requests for admission and/or document production. [*Id.*]. North Pointe also contends that, under FED.R.CIV.P. 26(c), this Court should preclude the deposition of Mr. Polansky regarding any discoverable information even if not otherwise protected by FED.R.CIV.P. 26(b)(1) or 26(b)(2)(c), because of the traditional discouragement of deposing opposing counsel. [Docket Entry No. 11-2, at *20-29]. North Pointe argues, and Memory Bowl does not appear to contest, that the *Shelton* standard applies, which places the burden of proof on the party seeking the deposition. *Shelton v. American Motors Corp.*, 850 F.2d 1323, 1327 (8th Cir. 1986). [*Id.* at 22-25]. Finally, North Pointe states that, pursuant to FED.R.CIV.P. 45, Messrs. O'Brien and Rennell, as non-officer employees, must be procured for deposition by subpoena rather than notice.  Consequently, North Pointe argues that Messrs. O'Brien and Rennell can only be deposed in Michigan, where they both reside. [Docket Entry No. 16, at *9-10].

In responding to North Pointe's opposition, Memory Bowl argues that the attorney-client privilege does not apply to the information that it seeks because Mr. Polansky's activities related to Memory Bowl's insurance claim are properly characterized as claims adjustment, rather than legal. [Docket Entry No. 13, at *13-16]. Specifically, Memory Bowl alleges that Mr. Polansky wrote letters threatening a defamation lawsuit, wrote letters to Plaintiff's public adjustors suggesting that post-fire debris removal was inconsistent with the insurance policy, and gave advice to North Pointe throughout the claims adjustment process. [*Id.* at *7]. Memory Bowl also claims that the appraisal umpire stated that Mr. Polansky "thwarted the normal appraisal process." [*Id.* at *11]. Finally, Plaintiff alleges that Mr. Polansky communicated with Messrs. O'Brien and Rennell with respect to coverage issues. [*Id.* at *12]. Plaintiff states that many of these communications occurred through email and letter. [*Id.* at *15].

Memory Bowl next asserts that the attorney-client privilege is waived when a client relies on an "advice of counsel" defense. [Docket Entry No. 13, at *16-21]. Plaintiff does not claim that North Pointe has relied on such a defense. Rather, it claims that North Pointe has stated, through Mr. Polansky, that it *may* rely on the defense. [*Id.* at *16]. Memory Bowl argues that unnecessary delay will result if North Pointe is not directed to disclose whether it intends to rely on an "advice of counsel" defense. Memory Bowl also argues that its need to depose Mr. Polansky satisfies the *Shelton* test. Specifically, Plaintiff contends that it has no other means to obtain the information sought; that the information sought is relevant and non-privileged; and that the information is crucial to its case. [*Id.* at *22-23]. Finally, Memory Bowl states that the equities of the case permit the Court

to compel Messrs. O'Brien and Rennell to be deposed in New Jersey, arguing that North Pointe is licensed to do business in New Jersey, that Michigan has no real connection to the case and that Defendant is in the better position to make travel arrangements than is Plaintiff. [*Id.* at *23-26].

## II.    Analysis

Pursuant to FED.R.CIV.P. 26(c), "[t]he court may for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense[.]" Good cause must be demonstrated by the party seeking the protective order. *Pansy v. Borough of Stroudsburg*, 23 F.3d 772, 786 (3d Cir. 1994). "Good cause is established on a showing that disclosure will work a clearly defined and serious injury to the party seeking closure." *Pansy,* 23 F.3d at 786 (quoting *Publicker Indus. v. Cohen*, 733 F.2d 1059, 1071 (3d Cir. 1984)). Such injury must be shown with specificity; "[b]road allegations of harm, unsubstantiated by specific examples or articulated reasoning, do not support a good cause showing." *Id.* The party seeking a protective order typically bears the burden of justifying the confidentiality "of each and every document sought to be covered[.]" *Id.* at 786-87. In deciding whether good cause exists for the issuance of a protective order, the court must balance: (1) whether disclosure will violate any privacy interests; (2) whether the information is being sought for a legitimate or improper purpose; (3) whether disclosure will cause a party embarrassment; (4) whether confidentiality is being sought over information important to public health and safety; (5) whether sharing of information among litigants will promote fairness and efficiency; (6) whether the party seeking to benefit from a protective order is a public entity or official; and (7) whether the case involves issues important to the public. *Id.* at 787-88; *Glenmede Trust Co. v. Thompson*, 56 F.3d 476, 483 (3d Cir. 1995). Whether or not a protective order issues is a matter left to the discretion of the Court. *Pansy,* 23 F.3d at 789.

North Pointe seeks to prevent Memory Bowl from deposing Mr. Polansky or from obtaining written discovery of Mr. Polansky's mental impressions, communications and other writings on the basis that such information is protected by the attorney-client privilege and work product immunity. As the party asserting the attorney-client privilege and work product immunity, North Pointe bears the burden of proving that the materials at issue qualify for protection from disclosure. *Conoco, Inc. v. U.S. Dep't of Justice*, 687 F.2d 724, 730 (3d Cir. 1982); *In re Grand Jury Investigation*, 599 F.2d 1224, 1235 (3d Cir. 1979). The attorney-client privilege protects confidential communications between attorney and client. *Upjohn Co. v. U.S.*, 449 U.S. 383, 389, 101 S.Ct. 677, 66 L.Ed.2d 584 (1981). The purpose of the privilege is to "encourage full and frank communication between attorneys and their clients." *Id.*; *see also Rhone-Poulenc Rorer Inc. v. Home Indem. Co.*, 32 F.3d 851, 862 (3d Cir. 1994). Such communication must be encouraged because "the administration of justice in a complex society depends upon the availability of sound legal advice, and in turn, the soundness of legal advice depends upon clients' willingness to present full disclosures to their attorneys." *Wachtel v. Health Net, Inc.*, 482 F.3d 225, 231 (3d Cir. 2007). The privilege protects confidential disclosures made by a client to an attorney in order to obtain legal advice. *Id.* at 230-31(citing *Fisher v. United States,* 425 U.S. 391, 403, 96 S.Ct. 1569, 48 L.Ed.2d 39 (1976)). Communications between an attorney and third parties, including the client's agents or representatives, are also privileged if made in confidence for the purpose of obtaining legal advice. *Louisiana Mun. Police Employees Retirement System v. Sealed Air Corp.*, 253 F.R.D. 300, 311 (D.N.J. 2008) (citing *United States v. Kovel*, 396 F2d 918 (2d Cir. 1961)). However, because the attorney-client privilege has the effect of withholding potentially relevant

6

information, courts must apply it only where it is necessary to achieve its purpose. *Wachtel,* 482 F.3d at 231.

Like the attorney-client privilege, the work product doctrine protects certain material from discovery.  However, the work product doctrine is "distinct from and broader than the attorney-client privilege." *U.S. v. Nobles*, 422 U.S. 225, 238, 95 S.Ct. 2160, 45 L.Ed.2d 141 (1975).  The doctrine exists to protect "the mental processes of the attorney, providing a privileged area within which he can analyze and prepare his client's case." *In re Cendant Corp. Sec. Litig.*, 343 F.3d 658, 661-62 (3d Cir. 2003) (quoting *Nobles,* 422 U.S. at 238). It protects "documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative[.]" FED.R.CIV.P. 26(b)(3). Rule 26(b)(3) establishes a two tier system of protection: first, work product prepared by an attorney or her agent in anticipation of litigation is discoverable, but only upon a showing of need and hardship.  *In re Cendant Corp. Sec. Litig.*, 343 F.3d 658, 663 (3d Cir. 2003) (citing *In re Ford Motor Co.,* 110 F.3d 954, 962 n.7 (3d Cir.1997), *abrogated in part on other grounds*, *Mohawk Indus., Inc. v. Carpenter*, 130 S. Ct. 599, 606, 175 L. Ed. 2d 458 (2009). Second, "core" work product consisting of "mental impressions, conclusions, opinion, or legal theories of an attorney or other representative of a party concerning the litigation" is "generally afforded near absolute protection from discovery." *Id.*

Before addressing the parties' other arguments, the Court first turns to North Pointe's potential waiver of the attorney-client privilege via reliance on the "advice of counsel" defense. To the extent that North Pointe intends to affirmatively assert an "advice of counsel" defense, the Court finds that such an assertion may waive the attorney-client privilege. *Glenmede*, 56 F.3d at

486 (citing *Rhone–Poulenc Rorer*, 32 F.3d at 863). Indeed, because a party asserting an "advice of counsel" defense has made the conscious decision to "interject the advice of counsel as an issue in the litigation," that party's communications with counsel are generally rendered discoverable.  *Id.* Here, however, North Pointe has not asserted such a defense; instead it has left open the possibility of doing so in the future.  Memory Bowls asserts, and the Court agrees, that to allow North Pointe to indefinitely defer claiming such a defense would be prejudicial to Plaintiff and could lead to unnecessary delay or expense.  As a result, while the Court shall not immediately require North Pointe to advise whether or not it intends to rely on an "advice of counsel" defense, the Court shall require North Pointe to do so no later than **May 4, 2012**.  The Court notes that North Pointe's decision on this issue may impact the scope of discovery otherwise permitted herein.

Understanding that North Pointe's potential reliance on an "advice of counsel" defense remains an open issue, the Court nevertheless addresses the remainder of Memory Bowl's demand to depose Mr. Polansky at this time.  Deposing opposing counsel can interfere with the adversarial process by "inviting delay, disruption, harassment, and perhaps even disqualification of the attorney from further representation of the client in the underlying litigation." *Horon Holding Corp. v. McKenzie*, 341 N.J. Super. 117, 129, 775 A.2d 111, 118 (App. Div. 2001) (quoting *Kerr v. Able Sanitary & Envt'l. Svcs., Inc.*, 295 N.J. Super. 147, 154-55, 684 A.2d 961 (App. Div. 1996). Further, it may disrupt the adversarial system, detract from the quality of client representation or have a "chilling effect" on communications between attorney and client. *Kerr,* 295 N.J. Super. at 157, 684 A.2d 961 (quoting *Shelton*, 805 F.2d at 1330). Therefore, as a matter of public policy, the request to depose opposing counsel "gives rise to presumptive 'good cause'

8

for a protective order under R. 4:10-3(a)." *Kerr,* 295 N.J. Super. at 157-58, 684 A.2d 961; *Horon Holding Corp.*, 341 N.J. Super at 118, 775 A.2d 111. Here, as North Pointe argues, it appears that most, if not all, of the non-privileged information Memory Bowl seeks to obtain from Mr. Polansky can be obtained through less burdensome means, including stipulation, requests for admission and document production. FED. R. CIV. P. 26(b)(2)(c).  Memory Bowl is therefore directed to use these means to obtain the non-privileged information it desires.  If Memory Bowl has any remaining concerns after such means are pursued, it may raise same with the Court at that time.

The Court is aware that in response to Memory Bowl's efforts to obtain information from less burdensome means, North Pointe may elect to withhold, if it has not already withheld, various documents related to Mr. Polansky by asserting the attorney-client privilege or work product doctrine. Absent the assertion of an "advice of counsel" defense, documents containing Mr. Polansky's mental impressions and communications created for the primary purpose of litigation may very well be entitled to protection and appropriately withheld as attorney-client privileged or attorney work product.  In contrast, documents created as part of the claims adjustment-fact investigation process would not be entitled to protection, even if Mr. Polansky was involved. To the extent North Pointe seeks to assert the attorney-client privilege or work product protection to prevent the production of any documents, the Court cannot evaluate the propriety of same without reference to a specific entry or entries on a proper privilege log. Indeed, without knowing what specific documents in dispute have been withheld, who created them, to whom they were sent and/or copied, and the subject of the documents, the Court simply cannot determine whether the claimed privilege is appropriate.  As a result, North Pointe is

9

instructed to provide Memory Bowl with a proper privilege log no later than **May 4, 2012.** If necessary, Memory Bowl may then raise specific objections to particular documents being withheld by North Pointe.

Finally, with regard to Memory Bowl's request that this Court compel the depositions of Messrs. O'Brien and Rennell to take place in New Jersey, the Court denies same.  Memory Bowl has offered no proof that Messrs. O'Brien and Rennell, claims adjusters for North Pointe, qualify as officers, directors or managing agents of the company.  Further, the depositions of Messrs. O'Brien and Rennell are not being sought pursuant to a Rule 30(b)(6) notice of deposition served on North Pointe; *i.e.*, Messrs. O'Brien and Rennell have not been designated by North Pointe to testify on its behalf.  Under these circumstances, Memory Bowl must compel Messrs. O'Brien and Rennell's attendance at their respective depositions via subpoena under Rule 45; it is not permitted to merely notice same since neither Mr. O'Brien nor Mr. Rennell are parties to this matter.  *See* Rules 30(b)(6) & 37(d)(1)(A)(i); *see also King v. Hochberg*, 17 N.J. Super. 533, 534 (Ch. Div. 1952)*. Cannon v. Va. Stevedoring Corp.*, 14 N.J. Super. 248, 250 (N.J. Co. 1951).  In light of the fact that Messrs. O'Brien and Rennell are residents of Michigan, even had Memory Bowl sought to use this Court's subponea power to compel them to appear for depositions in New Jersey, the Court would have no choice but to quash same pursuant to Rule 45(c)(3)(A)(ii), which requires the issuing court to quash or modify a subpoena that "requires a person who is neither a party nor a party's officer to travel more than 100 miles from where that person resides, is employed, or regularly transacts business in person[.]" Thus, on the record before It, the Court

is without authority to compel Messrs. O'Brien and Rennell's to appear for depositions in New Jersey.[1]

### III.    Conclusion

For the reasons stated above, North Pointe's Motion for a Protective Order is GRANTED in part and DENIED in part without prejudice.

IT IS therefore on this 13th day of March, 2012,

ORDERED that North Pointe's Motion for Protective Order is GRANTED in part and DENIED in part; it is further

ORDERED that the Clerk of the Court terminate this Motion [Docket Entry No. 11] accordingly.

s/ Tonianne J. Bongiovanni
**HONORABLE TONIANNE J. BONGIOVANNI
UNITED STATES MAGISTRATE JUDGE**

---

[1]The Court notes that North Pointe has indicated a willingness to produce Messrs. O'Brien and Rennell in Michigan without the need for Memory Bowl to incur the time and expense of issuing and serving subpoenas for same.

11